ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| ISLAND PORTFOLIO SERVICES, LLC como agente de FAIRWAY ACQUISITIONS FUND, LLC Recurridos<br><br>v.<br><br>RAFAEL MALDONADO RIVERA Peticionario | TA2025CE00886 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: VA2024CV00076<br><br>Sobre: Cobro de Dinero (Ordinario) |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de enero de 2026.

**I.**

La parte demandante y recurrida, Island Portfolio Services, LLC (IPS) como agente gestor de Fairway Acquisitions Fund, LLC (FAF), instó una acción civil el 3 de abril de 2024 contra la parte demandada y peticionaria, Sr. Rafael Maldonado Rivera (señor Maldonado Rivera), por cobro de dinero, al amparo del procedimiento sumario que provee la Regla 60 de Procedimiento Civil.[1] Reclamó una suma de **$7,633.12** provenientes de un crédito obtenido con Popular Auto, LLC (Popular Auto), presunto cedente de la acreencia.

El señor Maldonado Rivera instó su alegación responsiva.[2] Aceptó la solicitud del préstamo, pero negó que los documentos anejados fueran acreditativos de la deuda, por falta de información esencial. Cuestionó también la evidencia provista de la cesión. Entre sus defensas afirmativas, imputó el incumplimiento contractual por parte de Popular Auto, en los casos de balances pendientes luego de una venta de un vehículo financiado y devuelto por el cliente. A petición del señor

---

[1] Entrada 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] Entrada 9 SUMAC.

Maldonado Rivera, el pleito se convirtió a uno ordinario, observándose los procedimientos de rigor.

Las partes cumplieron con la presentación del *Informe para el manejo de caso*, el foro primario pautó el curso del pleito y se inició el procedimiento de descubrimiento de prueba.[3] Cabe señalar que el señor Maldonado Rivera denunció un proceder dilatorio en contra de IPS, en el que tuvo que intervenir el tribunal *a quo*.[4]

El 20 de noviembre de 2024, IPS incoó una *Solicitud de Sentencia Sumaria*.[5] Unió a su petición evidencia postal, copia del contrato de arrendamiento de vehículos de Popular Auto, el pliego de interrogatorio y requerimiento de documentos cursado al peticionario y su contestación.

El señor Maldonado Rivera se opuso al dictamen sumario.[6] Adujo la falta de legitimación activa de IPS e insuficiencia de la prueba. En particular, planteó que el recurrido no presentó evidencia de incumplimiento contractual. Además, impugnó la intención del recurrido de enmendar la reclamación por vía de la solicitud sumaria. IPS replicó las alegaciones de falta de legitimación y anejó documentos en apoyo a su postura.[7]

El 2 de mayo de 2025, el foro de primera instancia denegó resolver sumariamente.[8] A esos efectos, desglosó los hechos no controvertidos:

1) El señor Maldonado, en el mes de enero de 2016, suscribió un acuerdo con Popular Auto LLC en relación con un vehículo.

2) El 7 de diciembre de 2017, el señor Maldonado entregó voluntariamente el vehículo objeto del acuerdo.

3) Así las cosas, luego de entregada voluntariamente la unidad, se le realizó un Informe de Condición Entrega o Depósito de Vehículo.

---

[3] Entradas 21-23 SUMAC.
[4] Entradas 24-26 SUMAC.
[5] Entrada 28 SUMAC.
[6] Entrada 30 SUMAC.
[7] Entrada 37 SUMAC.
[8] Entrada 39 SUMAC.

4) El 16 de abril de 2018, Popular Auto LLC cursó al demandado una Carta de Deficiencia anunciando la venta del vehículo y una deficiencia remanente de $7,633.12.

5) En el curso ordinario de los negocios Fairway Acquisitions Fund, Llc. (FAC) adquirió la alegada deuda del referido remanente de $7,633.12.

6) Así las cosas, FAC contrató a la Agencia de Cobro IPS para tratar de recobrar dicha deuda.

7) Previo a la presentación de la demanda, en el mes de mayo de 2021, IPS, de conformidad con la Ley de Agencias de Cobro, envió una Carta de Aviso de Cobro por correo certificado con acuse de recibo número: 9414 8118 9876 5494 5583 07.

8) El Aviso de Cobro antes mencionado, fue recibido por el señor Maldonado y éste no hizo reclamación alguna de conformidad a la Ley de Agencias de Cobro o la Fair Debt Collection Practices Act.

A su vez, el foro primario consignó las controversias a dirimir en un juicio plenario:

1) El tipo de acuerdo fue el suscrito entre el señor Maldonado y Popular Auto LLC.

2) Si el señor Maldonado y Popular Auto cumplieron con los acuerdos a los que se obligaron.

3) Si se produjo un incumplimiento que diera paso a que existiera algún tipo de deuda exigible.

4) La forma y manera en que, de existir una deuda, se originó.

5) Lo referente a la determinación de las cantidades que se reclaman.

El *nisi prius* sostuvo su determinación, luego que IPS infructuosamente solicitara una reconsideración, a la que el señor Maldonado Rivera se opuso e IPS replicó.[9]

Así las cosas, el 16 de mayo de 2025, el señor Maldonado Rivera presentó una *Moción Informativa sobre Regla 35.1 [de Procedimiento Civil].*[10] Expresó que cursó una oferta de sentencia a la parte recurrida, quien contaba con un plazo de diez días para contestar. IPS como agente gestor de FAF rechazó la oferta el 28 de mayo de 2025.[11]

---

[9] Entradas 41, 44-46 SUMAC.
[10] Entrada 40 SUMAC.
[11] Entrada 47 SUMAC.

De otra parte, se sometió el *Informe de conferencia con antelación al juicio.*[12] Al respecto, el señor Maldonado Rivera presentó una *Moción informativa y sometiendo objeciones a los documentos anunciados por la parte demandante.*[13] Alegó que no aprobó la versión del documento ni autorizó su presentación. Además, objetó ciertas piezas de evidencia documental identificadas por IPS, "[d]ebido a que la parte demandante alteró el documento sin dar oportunidad al suscribiente de poderlo revisar, ahora no hay concordancia de las objeciones y los documentos presentados". IPS arguyó que las objeciones se debían realizar en el juicio en su fondo, ocasión en que el juzgador podía dirimir la evidencia y su valor probatorio.[14] Así lo acogió el foro sentenciador.[15]

El juicio en su fondo se celebró el 19 de agosto de 2025.[16] Luego de la presentación de prueba del recurrido, el señor Maldonado Rivera solicitó en corte abierta la desestimación de la causa de acción, al palio de la Regla 39.2 (c) de Procedimiento Civil, conocida como *non-suit.* Sostuvo que IPS no había probado la existencia de una deuda vencida, líquida y exigible; ni había presentado evidencia de un evento de incumplimiento o la fecha del mismo. El Tribunal de Primera Instancia declaró con lugar la petición. Afirmó que no se daban los elementos establecidos por el ordenamiento jurídico para la procedencia de una acción de cobro de dinero.[17] La *Sentencia* final, firme e inapelable se notificó el 9 de septiembre de 2025.[18]

Entonces, como parte prevaleciente, el señor Maldonado Rivera instó oportunamente una *Moción de imposición de costas y honorarios al amparo de las Reglas 35.1 y 44.1 de las de Procedimiento Civil.*[19] Acompañó la petición con la carta de oferta de **$1,500.00** cursada,

---

[12] Entrada 50 SUMAC.
[13] Entrada 51 SUMAC.
[14] Entrada 54 SUMAC.
[15] Entrada 55 SUMAC.
[16] Refiérase a las entradas 56-59.
[17] Entrada 62 SUMAC.
[18] Entrada 60 SUMAC.
[19] Entrada 61 SUMAC.

evidencia de envío por correo certificado y la factura 432 por $7,981.25. Solicitó la concesión de las costas incurridas por **$150.00** más el pago de **$7,831.25** por concepto de honorarios de abogado, al tenor de la Regla 35.1 de Procedimiento Civil, *infra.*

La parte recurrida se opuso al petitorio.[20] En esencia, indicó que los honorarios de la norma procesal aludida no operaban de forma automática, sino que requerían de una determinación del tribunal en torno a si la parte perdidosa o su abogado actuaron con temeridad. Negó tal proceder. Añadió que, para que la oferta de sentencia surtiera efecto, debía ser razonable. Acotó que la oferta realizada equivalía a sólo un 20% de la deuda reclamada, lo que impidió su aceptación; y que la cifra solicitada superaba la cuantía reclamada en la acción judicial.

El señor Maldonado Rivera replicó.[21] Dijo que ofreció un 20% de lo solicitado, toda vez que la parte recurrida no contaba con evidencia para obtener un dictamen a su favor, como en efecto ocurrió. Defendió los honorarios reclamados por las más de 40 horas trabajadas, las cuales detalló en la factura y los recurridos eludieron refutar.

Ponderadas las posturas, el foro recurrido expresó lo siguiente el 13 de noviembre de 2025 en la *Orden* aquí impugnada:[22]

> LUEGO DE UN DETENIDO AN[Á]LISIS DEL EXPEDIENTE, LAS PARTICULARIDADES PROCESALES DE ESTE CASO Y LOS ESCRITOS DE LAS PARTES[,] SE DECLARA NO HA LUGAR A LA SOLICITUD DE IMPOSICI[Ó]N DE HONORARIOS DE ABOGADOS.

Insatisfecho, el señor Maldonado Rivera presentó el 11 de diciembre de 2025 la *Petición de Certiorari* que nos ocupa, en la que señaló un error:

> **EL [TRIBUNAL DE PRIMERA INSTANCIA] ERRÓ AL NO CONCEDER LAS COSTAS Y HONORARIOS DE ABOGADO A FAVOR DEL DEMANDADO, A PESAR DE [É]STE HABER CUMPLIDO A CABALIDAD CON LA REGLA 35.1 DE PROCEDIMIENTO CIVIL Y OBTENIDO SENTENCIA A SU FAVOR.**

---

[20] Entrada 64 SUMAC.
[21] Entrada 65 SUMAC.
[22] Entrada 68 SUMAC. Notificada el 14 de noviembre de 2025.

En cumplimiento de *Resolución,* IPS como agente gestor de FAF presentó *Alegato en oposición a certiorari* el 24 de diciembre de 2025. Con el beneficio de ambas comparecencias, procedemos a resolver.

**II.**

**A.**

La oferta de sentencia se describe como "una proposición escrita dirigida a la parte reclamante, mediante la cual el demandado o la parte contra la cual se reclama se allana a que se dicte sentencia en su contra bajo los términos expuestos en la oferta". *Ortiz Muñoz v. Rivera Martínez,* 170 DPR 869, 877 (2007). La Regla 35.1 de Procedimiento Civil, *Oferta de sentencia,* 32 LPRA Ap. V, regula la figura, cuyo propósito esencial es promover las transacciones, reducir los costes de litigación, adelantar la pronta disposición de las reclamaciones judiciales y reducir la carga de los tribunales. *Id.* La referida norma procesal establece los requisitos para la configuración de una oferta de sentencia. Ésta dispone en lo pertinente:

> En cualquier momento antes de los veinte (20) días precedentes al comienzo del juicio, la parte que se defiende de una reclamación podrá notificar a la parte adversa una oferta para consentir a que se dicte sentencia en su contra por la cantidad o por la propiedad o en el sentido especificado en su oferta, con las costas devengadas hasta ese momento. La oferta deberá cumplir con los requisitos siguientes:
>
> (1) Hacerse por escrito, notificando a la parte a quien se le hace mediante correo certificado.
>
> (2) Especificar quién hace la oferta y la parte a la que va dirigida.
>
> (3) Establecer la cantidad, si alguna, que se ofrece por concepto de daños.
>
> (4) Especificar la cantidad total o propiedad y condiciones ofrecidas.
>
> (5) Establecer la cantidad por concepto de costas devengadas hasta el momento.
>
> Si dentro de los diez (10) días siguientes a la notificación la parte adversa notifica por escrito que acepta la oferta, cualquiera de las partes podrá presentarla junto con la notificación de su aceptación y la prueba de su notificación, y entonces el Secretario o Secretaria del tribunal dictará sentencia. Si no es así aceptada, será considerada como retirada y no será admisible en evidencia, excepto en un

procedimiento para determinar costas, gastos y honorarios de abogado o en un procedimiento para obligar al cumplimiento de una sentencia dictada, producto de una oferta de sentencia.

En todo caso en que la sentencia que obtenga finalmente la parte a quien se le hizo la oferta sea igual o menos favorable, ésta tendrá que pagar las costas, los gastos y los honorarios de abogado incurridos con posterioridad a la oferta.[23]

.     .     .     .     .     .     .     .

Sobre esta norma, el Tribunal Supremo de Puerto Rico ha pautado que, en aras de "mantener abiertos" los procesos judiciales a los litigantes de buena fe, la Regla 35.1 de Procedimiento Civil, *supra,* no opera de manera automática. *Morell Corrada v. Ojeda,* 151 DPR 864, 881 (2000). Nuestro alto foro apuntó que para la imposición de honorarios de abogado a favor de la parte demandada y contra la parte demandante que rechazó una oferta de transacción más favorable que la sentencia finalmente obtenida en el caso, se requiere "*una previa determinación de temeridad o arbitrariedad en dicha actuación por parte del tribunal de instancia*". (Bastardillas en el original). *Id.*, pág. 882.[24] Ello responde a que, como principio fundamental de nuestro sistema de administrar justicia, está el "no castigar a un litigante que ha acudido a la vía judicial para vindicar un derecho por el simple hecho de no haber prevalecido, o de haber recibido una cantidad inferior a la ofrecida". *Id.*, pág. 880. Por tanto, distinto a la norma reglamentaria federal de la cual proviene la nuestra,[25] es mandatorio que los tribunales tomen en consideración la conducta de la parte a que se pretende imponer el pago de honorarios de abogado. *Id.;* véase, J.A. Cuevas Segarra, *Tratado de derecho procesal*

---

[23] Para fines ilustrativos en cuanto a su similitud, citamos la última oración de la hoy derogada Regla 35.1 de Procedimiento Civil de 1979, 32 LPRA ant. Ap. III: "Si la sentencia que obtuviere finalmente la parte a quien se le hizo la oferta no fuera más favorable, ésta tendrá que pagar las costas, gastos y honorarios de abogado incurridos por la parte que hizo la oferta con posterioridad a la misma".

[24] Cabe señalar que el comentarista Rafael Hernández Colón opinó que esta pauta era contraria a la eficacia de la mecánica operacional de la regla. Véase, Hernández Colón, *op. cit.*, sec. 3806, pág. 407. Sin embargo, al aprobar el nuevo ordenamiento procesal, el Tribunal Supremo, si bien aludió a la naturaleza punitiva de la norma, refrendó el caso *Morell Corrada v. Ojeda, supra*; véase, *Informe de Reglas de Procedimiento Civil*, del Secretariado de la Conferencia Judicial y Notarial del Tribunal Supremo de Puerto Rico, marzo 2008, págs. 385-387.

[25] Refiérase a la Regla 68 de Procedimiento Civil federal.

*civil*, 2da ed., San Juan, Publicaciones JTS, 2011, t. III, págs. 1028-1029.[26]

Finalmente, en cuanto a la razonabilidad, veracidad y buena fe de la oferta, los tribunales deben auscultar diversos factores a la luz de las circunstancias particulares del caso. A saber: (1) la cuantía ofrecida, (2) los términos de la oferta, (3) la controversia planteada y (4) la etapa de los procedimientos al momento en que se realiza la oferta. *Id.*, pág. 882.

**B.**

Por otro lado, en nuestro ordenamiento jurídico, la Regla 44.1 (d) de Procedimiento Civil, *Honorarios de abogado*, 32 LPRA Ap. V, gobierna la concesión de honorarios de abogado. Así establece, en parte, la norma procesal:

> En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. [...]

El pago de honorarios de abogado corresponde a favor de la parte que prevalece y no a su abogado. R. Hernández Colón, *Práctica jurídica de Puerto Rico, Derecho procesal civil*, 6ta ed., San Juan, LexisNexis de Puerto Rico, 2017, sec. 4401, pág. 436. La penalidad "[s]e impone por haber ocupado innecesariamente el tiempo de la administración de justicia". *Id.*, sec. 4402, pág. 436. La imposición de honorarios de abogado procede en derecho cuando una parte ha actuado con temeridad o frivolidad. *Torres Vélez v. Soto Hernández*, 189 DPR 972, 993 (2013), que cita a *Santiago v. Sup. Grande*, 166 DPR 796, 820 (2006).

A pesar de que la regla no describe en qué consiste una conducta temeraria, es norma asentada que se incurre en temeridad cuando se promueve un pleito frívolo, o se provoca un litigio que se pudo evitar, o se prolonga indebidamente, obligando a la otra parte a incurrir en gastos

---

[26] El tratadista Cuevas Segarra, al citar a *H.U.C.E. de Ame. v. V. & E. Eng. Const.*, 115 DPR 711, 714 (1984), indicó que, en este campo, las decisiones del Tribunal Supremo federal tienen valor persuasivo en nuestra jurisdicción, aunque se trate de textos idénticos. Cuevas Segarra, *op. cit.*, págs. 1029-1030.

innecesarios. *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 504 (2010); *Colón Santos v. Coop. Seg. Mult. P.R.,* supra, pág. 188; *P.R. Oil v. Dayco,* 164 DPR 486, 511 (2005. "[L]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia". *Jarra Corp. v. Axxis Corp.,* 155 DPR 764, 779 (2001). A esos efectos, la sanción pecuniaria que se impone por conducta temeraria tiene el propósito de "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte". *Marrero Rosado v. Marrero Rosado, supra,* pág. 505. El fin de la imposición de honorarios de abogado es penalizar a la parte que por su "terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito". *C.O.P.R. v. S.P.U.,* 181 DPR 299, 342 (2011).

La adjudicación de si una parte obró o no temerariamente descansa en la sana discreción del juzgador. *P.R. Oil v. Dayco, supra,* pág. 511. En nuestro ordenamiento procesal civil, cuando el tribunal condena a una parte a pagar honorarios de abogado, lo que puede hacer en todo tipo de acción, tal imposición constituye una determinación implícita de temeridad. *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 148 (2022). Establecida la existencia de temeridad, el tribunal deberá tomar en cuenta una serie de factores para poder calcular la cantidad que concederá, a saber: (1) grado de temeridad; (2) trabajo realizado; (3) duración y naturaleza del litigio; (4) cuantía involucrada, y (5) nivel profesional de los abogados. *C.O.P.R. v. S.P.U., supra,* págs. 342-343. Finalmente, en cuanto a nuestro rol apelativo, la determinación de honorarios de abogado no será revisada, a menos que el foro de primera instancia se haya excedido en su discreción. *Jarra Corp. v. Axxis*

*Corp. supra*, pág. 779; *S.L.G. Flores–Jiménez v. Colberg,* 173 DPR 843, 866 (2008); *CNA Casualty of P.R. v. Torres Díaz,* 141 DPR 27, 44 (1996).

## III.

En la causa presente, el señor Maldonado Rivera aduce que el foro impugnado abusó de su discreción al denegar las costas y honorarios de abogado a su favor, a pesar de su cumplimiento con la Regla 35.1 de Procedimiento Civil, *supra,* y haber prevalecido en el pleito vía *non-suit,* toda vez que el recurrido no logró demostrar por preponderancia de la evidencia su reclamación dineraria. Argumenta que IPS tuvo múltiples oportunidades previas a la vista en sus méritos para examinar la suficiencia de su prueba. Sostiene que el tribunal *a quo* incidió al no evaluar la razonabilidad de la oferta cursada ni tomar en consideración la conducta de IPS al rechazarla, según afirmó, "por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos".[27] Así resume las incidencias:[28]

> (1) antes de realizarse la oferta, había culminado el descubrimiento de prueba, por lo que las partes conocían la evidencia que se podía presentar en el juicio en su fondo;
>
> (2) antes de realizarse la oferta, el Tribunal había emitido una *Resolución* denegando unas solicitudes de sentencia sumaria y delimitando las controversias que se atenderían en el juicio es su fondo;
>
> (3) se realizó una Oferta de Sentencia advirtiendo que la parte demandante no contaba con prueba para probar las controversias señaladas;
>
> (4) aun ante la ausencia de prueba, la parte demandada ofertó pagar el 20% de la suma reclamada;
>
> (5) la parte demandada cumplió con todos los requisitos de la Regla 35.1 de Procedimiento Civil;
>
> (6) la parte demandante rechazó la oferta de plano y no realizó contraoferta alguna; y
>
> (7) el Tribunal, luego de un juicio en su fondo, desestimo la demanda mediante un *non-suit* debido a que la parte demandante no contó con evidencia para probar los elementos de su causa de acción.

---

[27] Subrayado suprimido; véase *Petición de Certiorari,* pág. 18.
[28] *Petición de Certiorari,* pág. 4.

Por su parte, IPS insiste en tildar la oferta realizada como irrazonable, en referencia al finiquito de $1,500.00, equivalente a un 20% de la cuantía reclamada, aun cuando no pudo probar su caso ni por la vía sumaria ni en un juicio en sus méritos.[29] Abogó por la discreción judicial para determinar la ausencia de temeridad y su negativa a la imposición de honorarios de abogado en su contra. Mencionó que el peticionario y su abogado conocían los gastos y complejidades del procedimiento ordinario, cuya conversión solicitaron en su día e IPS no objetó. Reiteró, además, en que la suma solicitada superaba el monto reclamado.

Como se sabe, esta determinación postsentencia es revisada por esta curia, al amparo de la conocida Regla 40, C*riterios para la expedición del auto de certiorari*, del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025). La norma nos autoriza a expedir un auto de *certiorari* cuando el tribunal recurrido se equivoca en la interpretación de una norma procesal, al igual cuando se puede evitar un fracaso de la justicia.

De entrada, es menester aclarar que el foro recurrido no denegó la concesión de costas en atención a los procedimientos observados, ya que éstas son mandatorias,[30] sino que su pronunciamiento se suscribió a la partida de honorarios de abogado. Al respecto, aun cuando la *Sentencia* emitida recogió un minucioso trasfondo procesal de las incidencias previas al juicio, así como de la vista en su fondo, el foro primario no consignó una determinación expresa de conducta temeraria o frívola por parte de IPS ni impuso honorarios de abogado. No obstante, consideramos que precisamente de dicho tracto se desprende palmariamente una actitud contumaz del recurrido, quien sin evidencia suficiente a su favor, a sabiendas, redujo al señor Maldonado Rivera a

---

[29] IPS aludió a otra oferta inferior de $1,000.00; véase, anejo de la entrada 64 SUMAC.
[30] Refiérase a la Regla 44.1 (a-c) de Procedimiento Civil. 32 LPRA Ap. V.

los rigores de un procedimiento judicial que, a esta fecha, se ha extendido por casi dos años. Si bien la jurisprudencia ha dictado la importancia de "mantener abiertos" los tribunales, esto se reserva a los litigantes de buena fe, ya que el resto debe afrontar las medidas punitivas que provee el ordenamiento procesal civil. Nótese que, debido a la amplia experiencia de IPS en este tipo de pleito, éste conocía o debía conocer los requisitos de las causas de acción reclamadas sobre cobro de dinero e incumplimiento contractual; así como la evidencia necesaria para demostrar sus alegaciones. De hecho, incluso estaba al tanto de las controversias que se dilucidarían en el juicio, según esgrimidas por el foro de primera instancia. Sin embargo, IPS rechazó intransigentemente una oferta de sentencia, no atendió las objeciones a su prueba e insistió en el pleito, a pesar de habérsele hecho saber en etapas tempranas del litigio que no contaba con evidencia suficiente, tendente a respaldar una expectativa razonable de prevalecer.

Al final, el tribunal acogió la desestimación invocada por el peticionario al justipreciar que IPS no cumplió con la prueba necesaria para justificar el remedio dinerario solicitado. Nada más y nada menos que por fallar en demostrar la existencia de un acto de incumplimiento; el vencimiento de la deuda o que ésta fuera líquida y estuviera vencida y, por ende, exigible. Por ello, colegimos que el *nisi prius* erró cuando fue compelido por el señor Maldonado Rivera mediante la *Moción de imposición de costas y honorarios al amparo de las reglas 35.1 y 44.1 de las de procedimiento civil* a evaluar la conducta de IPS y se abstuvo, sin mayor explicación ni análisis, de conceder una partida en concepto de honorarios de abogado, evidentemente sostenida en la conducta frívola de la parte recurrida.

Decididamente el señor Maldonado Rivera nos persuadió para intervenir en esta etapa procesal, decretar la temeridad de IPS y favorecer la correspondiente concesión de honorarios de abogado, por virtud de las Reglas 35.1 y 44.1 (d) de Procedimiento Civil, *supra.* Recuérdese que la

finalidad de la imposición de honorarios de abogado en estos casos es establecer una penalidad a un litigante perdidoso que, por su obstinación infundada, somete innecesariamente a la parte contraria a asumir "las molestias, los gastos, el trabajo y las inconveniencias de un pleito". *Andamios de P.R. v. Newport Bonding*, 179 DPR 503, 520 (2010). En ese sentido, si en un caso como éste no se observan las consecuencias de un proceder temerario, claramente se desvirtuarían las normas procesales atinentes. Ahora bien, estimamos que la suma solicitada, la cual excede la cuantía reclamada en la *Demanda*, debe ser evaluada por el foro sentenciador a la luz de criterios de razonabilidad.

## IV.

Por los fundamentos expuestos, expedimos el auto de *certiorari* y revocamos la *Orden* impugnada. En consecuencia, devolvemos los autos ante el Tribunal de Primera Instancia para que dirima la cuantía de las costas y el pago de honorarios de abogado a favor del Sr. Rafael Maldonado Rivera.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones